UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DALLAS COUNTY HOSPITAL DISTRICT § <br> - PARKLAND MEMORIAL HOSPITAL, *et* § <br> *al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> AMNEAL PHARMACEUTICALS, INC., *et* § <br> *al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 4:19-CV-04834 |

## MEMORANDUM AND ORDER

Defendant CVS Pharmacy, Inc. ("CVS") has moved to stay this case until the Judicial Panel on Multidistrict Litigation ("JPML") considers whether to finalize its order transferring this action to the National Prescription Opiate MDL pending in the Northern District of Ohio. (Doc. No. 34). Plaintiffs, a collection of Texas hospitals, oppose the stay and move to remand, arguing that no basis for federal removal is present. (Doc. Nos. 5, 40).

On November 20, 2019, Plaintiffs filed *Dallas County Hospital District, et al.* v. *Amneal Pharmaceuticals, LLC, et al.*, in the 162nd Judicial District Court for Dallas County, Texas. Plaintiffs' original petition asserts claims for negligence, public nuisance, unjust enrichment, common law fraud, and civil conspiracy under Texas common law against three groups of defendants—the Marketing Defendants, the Distributor Defendants, and the Retail Pharmacy Defendants. (Doc. No. 34-1).

On November 27, 2019, Defendant CVS moved to transfer the case to the 152nd Judicial District of Harris County, TX for consolidation for pre-trial purposes with the Texas MDL styled *In re Texas Opioid Litigation* ("Texas MDL"). Then, on December 12, 2019, defendants

removed the case on federal question grounds. (Doc. No. 1). The Notice of Removal states: "This Court has original jurisdiction over the subject action pursuant to 28 U.S.C. § 1331 because this suit falls within the CSA [Controlled Substances Act], which raises a federal question." (Doc. No. 1, ¶ 3).

Following removal, the JPML issued a conditional transfer order, indicating that the case should be transferred because it appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." (Doc. No. 34-10). Plaintiffs moved to remand. (Doc. No. 5). CVS moved to stay a ruling on the motion to remand pending the JPML's decision whether to transfer the case. (Doc. No. 34). The Court heard argument on both the Motion to Remand and the Motion to Stay on January 16, 2020. (Minute Entry 1/16/20).

"The pendency of a . . . conditional transfer order . . . before the Panel pursuant to 18 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." J.P.M.L. R. 2.1(d). In deciding whether to grant a motion to remand in a case potentially slated for MDL transfer, many courts following a three-step procedure first articulated in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001): (1) If a preliminary assessment of the jurisdictional issue shows that removal was improper, the court should remand the case. (2) If the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in cases transferred to the MDL proceeding. (3) If the jurisdictional issue is both difficult and similar to those in transferred cases, the court should consider the motion to stay, taking into account judicial economy and potential prejudice to both parties. *Id*. at 1048–49.

The parties dispute whether there is federal question jurisdiction. "A federal question exists only where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008)). Plaintiffs raise only Texas state law causes of action. Thus, the issue is whether this case falls into the "special and small category of cases" in which federal jurisdiction exists when state law creates the cause of action. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).

At the hearing, the parties focused on Plaintiffs' claims for negligence per se. "Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law." *Ybarra v. Ameripro Funding, Inc.*, 2018 WL 2976126, at *9 (Tex. App.-Houston [1st Dist.] 2018, pet. denied) (citation omitted). Claim I of the petition alleges that Defendants' violations of Texas public safety laws and the CSA constitute negligence per se. (Doc. 1-3 at ¶1043). Specifically, the petition alleges that "Defendants violated Texas and federal law in failing to report suspicious orders of opioid pain medications, in failing to maintain effective controls against the diversion of opioids into other than legitimate medical channels, and in failing to operate a system to stop or at least diligently respond to orders which is [sic] flagged or should have been flagged as suspicious." (Doc. 1-3 at ¶1041).

According to CVS, Plaintiffs' claims for negligence per se necessarily raise a substantial

issue of federal law because "the source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations," and not Texas law. (Doc. No. 37 at 12). For instance, CVS argues that the alleged duty to "stop shipment on any order which is flagged as suspicious," (Doc. No. 1-3, ¶762), has its source in federal law alone. *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007) (interpreting 21 C.F.R. § 1301, Registration of Manufacturers, Distributors, and Dispensers of Controlled Substances).

Plaintiffs respond that all alleged duties have an independent basis in Texas law, which incorporates important provisions of the Controlled Substances Act, and corresponding regulations. *See, e.g.*, 25 Tex. Admin. Code § 229.420(a)(53) (incorporating by reference 21 C.F.R. § 1301); *see also* Tex. Health & Safety Code §§ 481.067(a), 481.0766(a) (incorporating certain federal standards regarding the manufacturing and distribution of controlled substances). Plaintiffs also point to the fact that the CSA provides no federal cause of action. (Doc. 5-1 at 24). *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986) ("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction"). *But see Grable*, 545 U.S. at 318 ("*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires").

The Court finds Plaintiffs' arguments persuasive, but not dispositive. The Supreme Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. of State of Cal.*

4 / 6

*v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9 (1983). Here, Plaintiffs acknowledge that many of their claims, including their negligence per se claims, turn on Texas statutes and regulations that directly incorporate provisions of the CSA and its implementing regulations. Addressing those claims will, thus, involve addressing questions of federal law. Of course, this fact alone does not automatically convert Plaintiffs' claims into ones 'arising under' federal law for purposes of federal question jurisdiction. But it does at least render difficult a determination whether Plaintiffs' claims necessarily raise substantial questions of federal law. Moreover, the Court determines that the absence of a federal cause of action under the CSA, though relevant, does not suffice to resolve this difficult question in favor of remand. Given the difficulty of the jurisdictional issue in this case, the Court proceeds to *Meyers* step two.

Other cases consolidated before the MDL in Ohio present similar removal questions. In fact, several other cases removed to the Southern District of Texas have been stayed for similar reasons pending a final transfer decision by the JPML. *See, e.g., Jim Wells County* v. *Purdue Pharma L.P.*, No. 4:19-cv-03580 (S.D. Tex. Oct. 4, 2019); *County of Williamson* v. *Walgreens Boots Alliance*, No. 4:19-cv-03299 (S.D. Tex., Oct. 29, 2019); *County of Angelina* v. *Allergan PLC*, No. 4:19-cv-03590 (S.D. Tex., Dec. 2, 2019). The Court proceeds to *Meyers* step three.

Granting a stay would further judicial economy by avoiding duplicative litigation and preventing inconsistent rulings. If the JPML transfers this case to the Opiate MDL, Plaintiffs will have the opportunity to present their motion to remand to Judge Polster, where it may be addressed along with other pending motions to remand using a unified framework. Plaintiffs argue that they will be prejudiced by the delay they may confront as Judge Polster works diligently to develop this framework. However, as became clear at the hearing, Plaintiffs will also face delay if the case is remanded, since the Texas opioid MDL is currently addressing only

a couple of bellwether cases, not including the present case. The balance of factors weighs in favor of granting a stay in this case pending the MDL's final transfer decision.

The JPML will likely hear arguments in March 2020 as to whether to finalize transfer of this case to the MDL. (Doc. No. 34-1). If the case is not transferred, this Court will promptly decide the motion to remand. Defendant's Motion to Stay (Doc. No. 34) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, this the 28th day of January 2020.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE